# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| VIASAT, INC., *et al.*<br>  *Appellants*,<br><br>v.<br><br>FEDERAL COMMUNICATIONS COMMISSION,<br>  *Appellee*,<br><br>SPACE EXPLORATION HOLDINGS, LLC,<br>  *Movant-Intervenor*. | Case No. 21-1123 (consolidated with Case Nos. 21-1125, 21-1127, and 21-1128) |

## APPELLANT DISH NETWORK CORPORATION'S
## MOTION FOR EXPEDITED AND SEPARATE BRIEFING

Pursuant to 28 U.S.C. § 1657(a), Federal Rule of Appellate Procedure 27, and this Court's Rule 27, Appellant DISH Network Corporation respectfully moves this Court for expedited briefing and oral argument in the above-captioned appeal. The continued effectiveness of the Commission's April 27, 2021 Order (the "Order"), which is under review here, is causing, and will continue to cause, injury to DISH and the millions of households subscribing to DISH's Direct Broadcast Satellite ("DBS") service. The Order allows Movant-Intervenor SpaceX to launch hundreds of satellites that exceed the power limits intended to protect DBS customer reception of satellite television. For that reason, DISH requests

1

that, among other expedition measures, the case be placed on the standby list for oral argument under section X.E.4 of the Court's Handbook. D.C. Cir. <u>Handbook of Practice and Internal Procedures</u> X.E.4.

In addition, DISH respectfully moves for leave to file a separate brief from Appellants Viasat and the Balance Group. The questions that DISH must brief revolve around interference from SpaceX into satellite television; they do not overlap with the question of the Order's environmental implications, which are the subject of Viasat's and the Balance Group's appeals.

Both the FCC and SpaceX have stated they do not object to expedition.[1] In addition, Viasat, the Balance Group, the FCC, the Department of Justice, and SpaceX have agreed to the request for separate briefing, the request that this matter be placed in the standby list for oral argument, and the following proposed briefing schedule and word limits:

| **Filing** | **Deadline** | **Word Limit** |
|---|---|---|
| Appellants' Opening Briefs | August 6, 2021 | 13,000 words for DISH, and 15,000 words for Viasat/Balance Group |
| Appellees' Briefs | September 21, 2021 | 22,000 words |
| Intervenor's Brief | September 28, 2021 | 15,100 words |

---

[1] *See* FCC Opp. to Viasat's Motion for Stay 4 ("[T]he Commission has no objection to Viasat's alternative request to expedite its appeal . . . a request that, if granted, would enable a prompt review of Viasat's claims without harming the interest of third parties and of the public."). SpaceX has also stated that it does not oppose an expedited appeal. SpaceX Opp. to Motion for Stay 19.

| Appellants' Reply Briefs | October 12, 2021 | 6,500 words for DISH, and 7,500 words for Viasat/Balance Group |
|---|---|---|
| Oral Argument | Subject to the standby procedures of section X.E.4 of the Court's Handbook | |

## I. There Is Good Cause to Expedite Briefing and Appellee Has No Objection

Under 28 U.S.C. § 1657, a "court shall expedite the consideration of any action . . . if good cause therefor is shown." Good cause exists in either of two cases: if "the delay will cause irreparable injury and . . . the decision under review is subject to substantial challenge," or if "the public generally, or . . . persons not before the Court, have an unusual interest in prompt disposition." D.C. Cir. Handbook of Practice and Internal Procedures VIII.B.

Not one, but both of these alternative requirements are handily met here. Delay will cause irreparable harm to DISH and its customers. When a satellite television customer watches the nightly news or a football game, the signal travels over a portion of the electromagnetic frequencies called the 12 GHz band, from a satellite located more than 22,000 miles above the Earth to that customer's home. When that customer's dish receives another competing signal from a different satellite in the same frequency band, and that other signal exceeds certain power limits, it jams the video communication, resulting in a tiled picture, at best, or no picture at worst. There are about 22 million households that depend on DBS

3

service provided by DISH and one other company for their television service. The FCC's Order authorized SpaceX to modify its system of more than 4,400 satellites (the "Starlink" system), and allowed that modified system to use the 12 GHz band. In doing so, the FCC ignored unrebutted expert evidence submitted by DISH that the modified Starlink system would significantly exceed the applicable power limits.

This is not tomorrow's concern but a problem for here and now. The power limits are the FCC's way of avoiding unacceptable interference into the DBS service and the reception of the service by these 22 million families. With more than 1,500 satellites already launched, and new ones scheduled to follow with some regularity, the Starlink system is a clear and present danger for these families' television service.

And in this case, it gets worse: because Starlink is a nationwide system, DISH will not know which of its customers are suffering interference because of SpaceX. The customers will not know either. All that the customers losing reception will think is that their dish is not working, not that an army of 4,400 satellites marshalled into orbit by SpaceX is jamming it.

A long line of cases confirms that there is nothing reparable about the injury from a disruption of service; in the world of communications, a disruption of service is more serious and less reparable than unacceptable interference—the

literal jamming a video signal and tiled images or blank screens. Both federal district courts and the FCC already have concluded that a service provider, like DISH, experiences irreparable harm when its services are disrupted. *See, e.g.*, *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) ("[R]educed system performance, system unavailability or data loss would inflict irreparable harm on eBay consisting of lost profits and lost customer goodwill. Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, not easily compensable and is therefore an appropriate basis for injunctive relief."); *CBS Commc'ns Servs. Inc. v. Centennial Wireless PCS*, 13 FCC Rcd. 4471 ¶ 19 (1998) (finding irreparable harm based on potential disruptions to broadcaster's services because the disruptions would damage its reputation and ability to keep subscribers and attract new subscribers); *Revisions to Broad. Auxiliary Serv. Rules in Part 74*, 18 FCC Rcd. 7032, 7034 ¶ 6 (2002) (finding that operators would suffer irreparable harm because there is an increased likelihood of interference to the receive facilities); *see also Washington Broad. Co. (WOL)*, 32 F.C.C. 530, Conclusion ¶ 1 (1961) (finding that a reduced service area and population reached by a broadcast station as a result of interference constitutes an injury).[2]

---

[2] *See also Morgan Stanley DW Inc. v. Rothe*, 150 F.Supp.2d 67, 78 (D.D.C. 2001) ("The plaintiff has persuaded the court that it would likely suffer irreparable harm in the loss of its customers and by the possibly permanently damaged relationships

Just as important, a finding of irreparable injury is compelled by the rationale correctly set forth by the Commission when it weighed a stay of its 6 GHz unlicensed device order in August 2020. *See Unlicensed Use of the 6 GHz Band*, 35 FCC Rcd. 8739 (2020). There, the Commission denied the request of electric utility and public safety interests for a stay on the ground that they would suffer interference from the unlicensed devices. But the FCC's reasoning is a how-to recipe for finding irreparable injury here. There, the FCC had reached technical conclusions based on the entire record; here, it has not. There, the FCC had concluded that the studies purporting to show interference "have shortcomings or are flawed or unreliable so as not to be persuasive." *Id.* ¶ 27. Here, there is no such conclusion. There, the FCC stated that tracking down interference would be the responsibility of its Enforcement Bureau, and would not burden the petitioners. *Id.* ¶ 28. Here, there is no way for the Enforcement Bureau to track down harmful interference. There, the Commission had found that unlicensed devices would not realistically reach large numbers "during the short-term pendency of the petitions

---

with its customers."); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Wertz*, 298 F.Supp.2d 27, 34 (D.D.C. 2002) ("[T]he Court concurs with plaintiff's argument that the loss of confidential customer information and the loss of customer goodwill and trust that has been established through the dealings of Merrill Lynch customers with their brokers is a concrete harm that cannot be compensated with money damages.").

for review." *Id.* ¶ 31.  Here, the Starlink system is adding customers by the day by its own admission.

The Commission's Order is also subject to substantial challenge, another element of the good cause showing required for expedition.  In making its determination that SpaceX's Starlink system would not cause unacceptable interference, the Commission was required by the Administrative Procedure Act to consider all aspects of the potential interference problem.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (stating that agency decision-making is arbitrary and capricious when it "fail[s] to consider an important aspect of the problem").  As stated in DISH's Notice of Appeal, the Commission did not meet this charge.

The public, too, has an unusually strong interest in prompt resolution.  First of all, the 22 million families receiving DBS service and whose television reception is interrupted by SpaceX are a significant portion of the U.S. public, many of whom live in rural and remote areas.  Second, these numerous members of the public will face service interruptions to local news, live sports programming, and other television broadcasts.  The public, moreover, has a strong interest in ensuring that agencies act within the limits of statutory authority. *Nat'l Treasury Employees Union v. United States Dep't of Treasury*, 838 F. Supp. 631, 640 (D.D.C. 1993) ("The preservation of the rights in the Constitution and the legality

7

of the process by which government agencies function certainly weighs heavily in the public interest."). Thus, for the reasons set forth above, there is good cause for expedition here.

Finally, the Commission has already represented to the Court in its Opposition to Viasat's Motion for Stay Pending Judicial Review that the Commission has no objection to expedition of this appeal. FCC Opp. 4 ("[T]he Commission has no objection to Viasat's alternative request to expedite its appeal . . . a request that, if granted, would enable a prompt review of Viasat's claims without harming the interest of third parties and of the public."). SpaceX has also stated that it does not oppose an expedited appeal. SpaceX Opp. 19.

## II.    DISH Should Be Allowed Separate Briefing from the Other Appellants

DISH requests authority for leave to file a separate brief from the other Appellants, Viasat and the Balance Group. DISH is appealing over issues that are not only different from, but have no overlap with, the questions that are the subject of the two other Appellants' appeals. Both Viasat and the Balance Group primarily claim that the Commission's Order violated the National Environmental Policy Act. In contrast, DISH's appeal does not implicate environmental issues at all, and instead focuses on the Order's error associated with electromagnetic interference into the DBS service and the television reception of DISH's customers. Each of these totally separate sets of issues warrants the word limits

contemplated by the rules for opening and reply briefs. Accordingly, DISH requests a limit of 13,000 words for its separate opening brief and 6,500 words for its separate reply brief.

### III. Conclusion

For the foregoing reasons and good cause shown, DISH respectfully requests that consideration of this matter be expedited, that the Court issue an order setting the foregoing briefing schedule, and that the Court place this case on standby for oral argument and direct the Clerk to schedule oral argument on the earliest available date following the completion of briefing. DISH also respectfully requests the Court grant DISH leave to file a separate brief from the other Appellants. As mentioned, Appellees and Movant-Intervenor agree to this request.

                    Respectfully submitted,

                    <u>/s/ *Pantelis Michalopoulos*</u>
                    Pantelis Michalopoulos
                    Andrew M. Golodny
                    Cara A. Lawson
                    STEPTOE & JOHNSON LLP
                    1330 Connecticut Ave, NW
                    Washington, DC  20036
                    Tel:  202-429-3000
                    Fax: 202-429-3902

                    *Counsel for DISH Network Corporation*

June 28, 2021

## CERTIFICATE OF COMPLIANCE

I, Pantelis Michalopoulos, counsel for Appellant DISH Network Corporation, hereby certify pursuant to Fed. R. App. P. 32(g) that the Motion for Expedited and Separate Briefing complies with the type-volume limitations of Fed. R. App. P. 27(d)(2). This motion was prepared in a proportionally space typeface using 14-point, Times New Roman font, and according to the word count of Microsoft Word, the word-processing system used to prepare the motion, the motion contains 1,934 words, excluding the parts of the document exempted by Fed. F. App. P. 32(f).

Dated: June 28, 2021

    /s/ *Pantelis Michalopoulos*
Pantelis Michalopoulos
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, D.C. 20036
(202) 429-6494

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2021 I electronically filed the foregoing document with the United States Court of Appeals for the D.C. Circuit by using the CM/ECF system. I certify that the counsel of record for Appellee and Movant-Intervenor are registered as ECF Filers and that they will be served by the CM/ECF system.

   /s/ *Pantelis Michalopoulos*
Pantelis Michalopoulos
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, D.C. 20036
(202) 429-6494