**ORAL ARGUMENT SCHEDULED FOR DEC. 3, 2021**

No. 21-1123 (and consolidated cases)

## IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

VIASAT, et al.,

*Appellants,*

v.

FEDERAL COMMUNICATIONS COMMISSION and
UNITED STATES OF AMERICA,

*Appellees,*

SPACE EXPLORATION HOLDINGS, LLC,

*Intervenor.*

On Appeal of an Order of the
Federal Communications Commission

## REPLY BRIEF FOR APPELLANT DISH NETWORK CORPORATION

Jeffrey H. Blum
Alison Minea
Hadass Kogan
**DISH NETWORK CORPORATION**
1110 Vermont Avenue NW
Suite 450
Washington, D.C.  20005
(202) 463-3703

Pantelis Michalopoulos
Andrew M. Golodny
Mark C. Savignac
William Travis West
**Steptoe & Johnson LLP**
1330 Connecticut Avenue NW
Washington, D.C.  20036
(202) 429-6494
PMichalo@steptoe.com

*Counsel for DISH Network Corp.*

October 12, 2021

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

GLOSSARY ........................................................................................ vi

STATUTES AND REGULATIONS .................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ..................... 1

ARGUMENT ...................................................................................... 4

I.    Evaluation of the Evidence Would Not Violate Any FCC Rule, the
      Failure to Consider the Evidence Could Not Be Excused by a Rule,
      and the FCC Waived the Rule It Invokes ............................................. 4

      A.    The Commission's Rules Did Not Prohibit Consideration of
            Additional Evidence ............................................................. 6

      B.    The Commission's Decision to Ignore DISH's Evidence in the
            Name of a Rule Was Arbitrary and Capricious ..................... 8

      C.    Neither the FCC's Reliance on a Rule that the FCC Waived,
            Nor the Waiver, Was Reasonable ........................................ 13

      D.    The FCC Does Not Adequately Explain Why It Did Not
            Follow the ITU's Own Process ............................................. 17

      E.    The Commission Abdicated Its Statutory Duty ................. 20

II.   The Commission Unlawfully Subdelegated Its Authority ............... 21

      A.    DISH Did Not Forfeit Its Subdelegation Challenge ............ 21

      B.    The Commission Impermissibly Subdelegated to the ITU
            and SpaceX ....................................................................... 23

III.  SpaceX's System Should Have Been Considered in a Later
      Processing Round ............................................................................. 25

IV.   The Order Vitiates Judicial Review and Infringes Due Process .... 26

CONCLUSION ................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*All Am. Cables & Radio, Inc. v. FCC,*
   736 F.2d 752 (D.C. Cir. 1984) ............................................................ 22

*Am. Horse Prot. Ass'n, Inc. v. Lyng,*
   812 F.2d 1 (D.C. Cir. 1987) ................................................................ 9

*Amerada Hess Pipeline Corp. v. FERC,*
   117 F.3d 596 (D.C. Cir. 1997) ............................................................ 24

*\* Env't Health Tr. v. FCC,*
   9 F.4th 893 (D.C. Cir. 2021) ............................................ 2, 8, 9, 10, 16

*Freeman Engineering Associates, Inc. v. FCC,*
   103 F.3d 169 (D.C. Cir. 1997) ............................................................ 22

*Functional Music, Inc. v. FCC,*
   274 F.2d 543 (D.C. Cir. 1958) ............................................................ 11

*Global Crossing Telecommunications, Inc. v. FCC,*
   259 F.3d 740 (D.C. Cir. 2001) ........................................................ 24, 25

*Grace v. Barr,*
   965 F.3d 883 (D.C. Cir 2020) . Here, the Order ................................ 16

*Graceba Total Communications, Inc. v. FCC,*
   115 F.3d 1038 (D.C. Cir. 1997) .......................................................... 11

*Indep. Cmty. Bankers of Am. v. Bd. of Governors of Fed.
   Rsrv. Sys.,*
   195 F.3d 28 (D.C. Cir. 1999) .............................................................. 12

*M2Z Networks, Inc. v. FCC,*
   558 F.3d 554 (D.C. Cir. 2009) ........................................................ 21, 22

*Matlovich v. Sec'y of the Air Force,*
   591 F.2d 852 (D.C. Cir. 1978) ............................................................ 15

*Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*,
468 F.3d 826 (D.C. Cir. 2006) ............................................. 20

*Ne. Cellular Tel. Co. v. FCC*,
897 F.2d 1164 (D.C. Cir. 1990) .......................................... 16

*Omnipoint Corp. v. FCC*,
78 F.3d 620 (D.C. Cir. 1996) ............................................. 22

*Orange Park Fla. T.V., Inc. v. FCC*,
811 F.2d 664 (D.C. Cir. 1987) ............................................ 27

*Texas v. Rettig*,
987 F.3d 518 (5th Cir. 2021) ............................................. 24

*Sacramento Mun. Util. Dist. v. FERC*,
428 F.3d 294 (D.C. Cir. 2005) ............................................ 12

*Sacramento Mun. Util. Dist. v. FERC*,
474 F.3d 797 (D.C. Cir. 2007) ....................................... 12, 13

*FCC v. Sanders Bros. Radio Station*,
309 U.S. 470 (1940) ........................................................... 27

*Time Warner Ent. Co., L.P. v. FCC*,
144 F.3d 75 (D.C. Cir. 1998) ............................................. 22

*Verizon v. FCC*,
770 F.3d 961 (D.C. Cir. 2014) ............................................ 22

**Administrative Decisions**

*First Modification Order*
  *Space Exploration Holdings, LLC, Request for*
  *Modification of the Authorization for the SpaceX NGSO*
  *Satellite System*,
  34 FCC Rcd. 2526 (2019) ................................................. 14

* Space Exploration Holdings, LLC Request for Modification
  of the Authorization for the SpaceX NGSO Satellite
  System, IBFS File No. SAT-MOD-20200417-0037, Order
  and Authorization and Order on Reconsideration, FCC 21-
  48 (rel. Apr. 27, 2021) .................................................. 10, 17

* *Teledesic*
  *Teledesic LLC for Minor Modification of License to*
  *Construct, Launch, and Operate a Non-Geostationary*
  *Fixed Satellite Service System,*
  14 FCC Rcd. 2261 (Int'l Bureau 1999) ............................... 26

## Statutes

* 47 U.S.C. § 303(f) ............................................................ 20, 27

* 47 U.S.C. § 405(a) ................................................................ 4

## Rules and Regulations

47 C.F.R. § 25.111(a) ............................................................ 7

* 47 C.F.R. § 25.146(a), (c) ..................................................... 6

## Other Authorities

* ITU Resolution 85, Application of Article 22 of the Radio
  Regulations to the Protection of Geostationary Fixed-
  Satellite Service and Broadcasting-Satellite Service
  Networks from Non-Geostationary Fixed-Satellite Service
  Systems (WRC-03) .......................................................... 18

* Circular
  ITU-BR Circular CR/414, Examinations Under Resolution
  85 (WRC-03) (published Dec. 6, 2016),
  https://www.itu.int/md/R00-CR-CIR-0414/en .................... 18

*\* Cases and other authorities principally relied upon are marked with asterisks.*

## GLOSSARY

| | |
|---|---|
| 12 GHz band | The portion of the electromagnetic spectrum ranging from 12.2-12.7 GHz |
| Communications Act | Communications Act of 1934, as amended, 47 U.S.C. §§ 151, *et seq.* |
| First Study | DISH Feb. 15, 2021 Letter (attaching *EPFD Assessment of SpaceX into DISH Ku-band GSO Networks*) (JA____-__) |
| Order | *Space Exploration Holdings, LLC Request for Modification of the Authorization for the SpaceX NGSO Satellite System*, IBFS File No. SAT-MOD-20200417-00037, Order and Authorization and Order on Reconsideration, FCC 21-48 (rel. Apr. 27, 2021) (JA____-__) |
| Second Study | DISH Mar. 25, 2021 Letter (attaching *EPFD Assessment of SpaceX into DISH Ku-band GSO networks located in the United States*) (JA____-__). |
| Third Study | DISH Apr. 23, 2021 Letter (attaching *EPFD Assessment of SpaceX with multiple frequency reuse into DISH Ku-band GSO receivers located in the United States*) (JA____-__) |

## STATUTES AND REGULATIONS

The relevant statutes and regulations not previously cited in DISH's opening brief are reproduced in the Statutes and Regulations Addendum.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This appeal boils down to whether the Commission was permitted to ignore the evidence, as it admits it did, in the name of a rule that did not preclude a look at the evidence, that could not justify ignoring the evidence, and that the agency decided to waive anyway. The answer is no.

While the Court sees many disputes about the reasonableness of an agency's analysis of record evidence, the Commission admits here that it ignored the engineering studies that DISH submitted into the record. *See* FCC Br. 44-45. It is also undisputed that SpaceX did not submit responsive studies of its own. The Commission's position is that it was entitled to ignore the evidence in front of it for one reason—because a supposedly contrary rule already exists in its books.

The Commission is wrong. First, the rule in question does not foreclose the Commission from considering evidence that SpaceX would exceed the applicable power limits. The rule merely requires a

favorable ITU finding.  It does not forbid additional Commission evaluation of a proposed satellite system.

Second, even if the rule did contain such a prohibition, it would not excuse the Commission from performing its APA duties.  This Court has made clear that an agency *must* consider evidence that its application of a rule in a given situation is unreasonable.  When the Commission is "confronted with evidence that its current regulations are inadequate," it "must offer more to justify its decision to retain its regulations than mere conclusory statements." *Env't Health Tr. v. FCC*, 9 F.4th 893, 903 (D.C. Cir. 2021).

Third, the FCC waived the very rule that it invoked to excuse it from considering DISH's evidence.  If the Commission placed such weight on the supposed sanctity and exclusivity of the ITU favorable finding requirement, the Order would not have postponed satisfaction of that requirement for an indefinite period of time.

The waiver of the rule was itself impermissible, as the only rationale given by the Order was that there was no reason not to grant it.  It makes no difference that the waiver was renewed rather than granted for the first time—renewal is not subject to a less searching

inquiry.  The brief now seeks to dress the waiver in the purple robe of an indisputable benefit—rural broadband.  Not only is this a made-for-appeal attempt to endow unreasoned actions with a rationale; the waiver, which affects a miniscule portion of SpaceX's frequencies, was not necessary to facilitate the rural broadband goal.

Fourth, the Commission consigns to a footnote its answer to the point that even the ITU has acknowledged the limitations of the ITU software and has advised administrations to follow a different process in certain cases.  In the Commission's telling, the ITU-recognized problems are irrelevant because the Commission itself decided not to follow the process the ITU requires in the case of problems, and because of alleged facts totally absent from the record.  The APA requires an agency to do better than this self-justifying bootstrapping.

Fifth, the agency's own rules, even if they had prohibited the agency from evaluating the evidence, cannot excuse the Commission from performing its statutory duty to avoid interference.

The FCC founders when it defends its abdication of its responsibilities to the ITU and SpaceX, and the resulting infringement on DISH's rights to judicial review.  Under this Court's interpretation of

the limited exhaustion requirement, 47 U.S.C. § 405(a), DISH did not have to give the agency another shot at getting it right. The FCC does not explain the blind adherence to a process about which even the delegate—the ITU—has rung the alarm bell. And, as for the deprivation of DISH's right to judicial review, the Commission argues, incredibly, that the inability to challenge the ITU's eventual finding does not matter because the FCC waived the favorable finding requirement. In other words, not only will the finding be unreviewable; no such finding will even exist. That makes DISH's grievance even more justified, not less.

## ARGUMENT

## I.    Evaluation of the Evidence Would Not Violate Any FCC Rule, the Failure to Consider the Evidence Could Not Be Excused by a Rule, and the FCC Waived the Rule It Invokes

The typical response brief confronts this Court with case law or facts that contradict appellant's brief. This case is an exception. Nowhere in its brief does the Commission distinguish any precedent cited by DISH, suggest that DISH has the facts wrong, or assert that DISH omitted a crucial piece of information.

SpaceX, for its part, claims in a section heading that the FCC "considered—and rejected—" DISH's evidence. SpaceX Br. 18. But

4

SpaceX's brief makes clear that the only "consider[ation]" SpaceX

mentions is for half of one of DISH's three studies.  Those studies

showed that:

- SpaceX's proposed satellite system would violate the applicable power limits by focusing more than one satellite at a time on the same area (First Study at 1 (JA____));

- SpaceX cannot meet its own projected demand unless it does focus more than one satellite at a time in the same area (*Id.*);

- SpaceX's system would exceed the power limits in *actual* customer locations—rather than the hypothetical locations off Greenland's shores used by the ITU's software—even with one satellite per area (Second Study at 1 (JA____)); and

- SpaceX's system would exceed the limits by even more if the effect of SpaceX satellites serving neighboring areas is considered (Third Study at 1 (JA____)).

Neither SpaceX nor the FCC engaged at all with any but the first

of these showings.  The Commission freely admits that it ignored

DISH's evidence, treating its studies as "irrelevant."  FCC Br. 45.  In its

defense, the Commission says that its hands were tied—it was

supposedly powerless to consider the evidence because its own rules

stopped it.  The Commission's position is wrong for five reasons.

### A.     The Commission's Rules Did Not Prohibit Consideration of Additional Evidence

According to the Commission's brief, "[i]f the Commission had relied on those studies . . . the agency would have violated its own rules."  FCC Br. 45.  Not so.  Nowhere does the relevant Commission rule state that its two-step framework precludes the Commission's additional review.  As the Commission observes (*id.* at 46), § 25.146 imposes two prerequisites for applicants:  (1) the applicant must self-certify that it will comply with applicable ITU power limits; and (2) the applicant must receive a "favorable" or "qualified favorable" rating from the ITU before commencing operations.  *See* 47 C.F.R. § 25.146(a), (c).  While the rule imposes these two *necessary* conditions for approval—or, at least, *apparently* necessary, since the Commission threw the second condition overboard—it hardly suggests that they are *sufficient*.  Nothing in the rule can be read to preclude the Commission from conducting its own review and independently considering the relevant evidence when circumstances warrant, as they did here.[1]

---

[1] Other rules of the Commission confirm that it "may request from any party at any time additional information concerning any application[.]"

6

Thus, while the FCC and SpaceX cite a number of cases in support of the uncontroversial proposition that agencies should follow their own rules, *see, e.g.*, FCC Br. 47-48, these cases are irrelevant. Consideration of DISH's evidence would not be a departure from the rules. And, of course, the agency's reliance on this precedent suffers from a serious self-contradiction that will be explored later: The Commission argues that it ignored the evidence because it had to follow a rule that it elected to waive rather than follow.

Nor does the rule require the use of a certain method for concluding that a proposed satellite system complies with the power limits, or forbid other methods, much less an improved one. Even if there had been such a prescription, the record is clear that the Second Study of DISH's expert Mr. Dupuis *in fact used the ITU software*, only substituting "real-world parameters" for theoretical locations. *See* Second Study at 2 (JA____).

The absence of a prescribed method from the rule is not surprising—what *would* be surprising is a rule in the Code of Federal

---

47 C.F.R. § 25.111(a). The Commission requested additional information from SpaceX in this very proceeding. *See* Int'l Bureau June 3, 2020 Letter (JA____).

Regulations requiring that compliance with the applicable power limits be determined solely at hypothetical locations, and forbidding use of actual locations where American households receive satellite television service. As discussed below, if such a rule did exist, adherence to it would not survive APA review, especially if the hypothetical locations turned out to be off Greenland's Arctic shores.

### B.    The Commission's Decision to Ignore DISH's Evidence in the Name of a Rule Was Arbitrary and Capricious

Even if the Commission's rule (47 C.F.R. § 25.146(a), (c)) did purport to require the agency to shut its eyes to DISH's studies, and even ignoring that the Commission then waived the very rule it now relies on, the law is clear. An agency cannot refuse to consider evidence that application of a rule is unreasonable simply because the rule is a rule.

This Court recently admonished the Commission on this very point. In *Environmental Health Trust v. FCC*, this Court ordered the Commission to reconsider its refusal to open a notice of inquiry on the ground that the Commission had ignored substantial comments in the record that contradicted its guidelines. 9 F.4th at 903. This Court emphasized that, when an agency "is confronted with evidence that its

8

current regulations are inadequate or the factual premises underlying its prior judgment have eroded, it must offer more to justify its decision to retain its regulations than mere conclusory statements." *Id.* The Court explained there were "multiple studies and reports . . . in the administrative record" suggesting that "the factual premise . . . underlying [the Commission's] current RF guidelines may no longer be accurate[,]" which "challenge[d] a fundamental premise of the Commission's decision to terminate its notice of inquiry[.]" *Id.* at 903, 905, 907.  Even under a "highly deferential standard of review,"[2] this Court concluded the Commission's order was "arbitrary and capricious in its failure to respond to record evidence . . . ." *Id.* at 903.

The Court explained that, because the "Commission's order remains bereft of any explanation as to *why*, in light of the studies in the record, its guidelines remain adequate[,]" the agency had "failed to provide a reasoned explanation for its determination . . . ." *Id.* at 900, 906.  A reasoned explanation is the bare minimum that the law

---

[2] *See also Am. Horse Prot. Ass'n, Inc. v. Lyng*, 812 F.2d 1, 4-5 (D.C. Cir. 1987) (refusal to institute rulemaking is at the high end of the deference range).

requires; "[w]ere the APA to require less, [this Court's] very deferential review would become nothing more than a rubber stamp." *Id.* at 906.

So it is here. While DISH never disputed the necessity for the rule, it showed that the rule alone was not enough to perform its intended function in this instance because SpaceX could not comply with the applicable power limits at real-world user locations, and the exceedance was even greater when considering satellites serving neighboring areas. Yet instead of evaluating whether application of the rule alone was or was not reasonable here, the Commission openly ignored the evidence and accused DISH of failing to comply with the rules. *See* Order ¶ 40 (JA____). "That utter lack of a response does not meet the Commission's obligation to provide a reasoned explanation . . . ." *Env't Health Tr.*, 9 F.4th at 909.

The Commission and SpaceX contend that DISH somehow waived its right to challenge the Order under review by failing to challenge the rule when it was first promulgated, more than four years ago. *See* FCC Br. 58; SpaceX Br. 3. This, of course, is not the law. DISH is not "collateral[ly]" attacking anything. SpaceX Br. 11. Rather, DISH

10

challenges the exclusive reliance upon the rule in the context of this specific Order.

This Court has explained the relevant principles: "As applied to rules and regulations, the statutory time limit restricting judicial review of Commission action is applicable only to cut off review directly from the order promulgating a rule. It does not foreclose subsequent examination of a rule where properly brought before this court for review of further Commission action applying it." *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546 (D.C. Cir. 1958). That is because, "unlike ordinary adjudicatory orders, administrative rules and regulations are capable of continuing application[,]" which means that "limiting the right of review of the underlying rule would effectively deny many parties ultimately affected by a rule an opportunity to question its validity." *Id.* Consistent with this precedent, this Court permits "both constitutional *and statutory* challenges to an agency's application or reconsideration of a previously promulgated rule, *even if the period for review of the initial rulemaking has expired.*" *Graceba Total Communications, Inc. v. FCC*, 115 F.3d 1038, 1040 (D.C. Cir. 1997) (emphases added).

11

The Commission and SpaceX pay no heed to this fundamental principle. They make frequent reference to "notice-and-comment rulemaking," as if the mere fact of a completed rulemaking could ward off all subsequent challenges to the application of that rule. This Court, however, dismisses that sort of administrative immunity: "We have frequently said that a party against whom a rule is applied may, at the time of application, pursue substantive objections to the rule, including claims that an agency lacked the statutory authority to adopt the rule, even where the petitioner had notice and opportunity to bring a direct challenge within statutory time limits." *Indep. Cmty. Bankers of Am. v. Bd. of Governors of Fed. Rsrv. Sys.*, 195 F.3d 28, 34 (D.C. Cir. 1999); *see also Sacramento Mun. Util. Dist. v. FERC*, 428 F.3d 294, 299 (D.C. Cir. 2005).

In support of the specific proposition that an agency rule can excuse the agency's duty of reasoned decisionmaking, SpaceX cites only *Sacramento Municipal Utility District v. FERC*, 474 F.3d 797 (D.C. Cir. 2007). *See* SpaceX Br. 19-20. The case, which even SpaceX acknowledges is not directly applicable through a "cf." cite, is not supportive even by analogy. There, the petitioner challenged (for the

12

second time) a FERC order denying it the opportunity to continue

purchasing services from another company.  474 F.3d at 798.  The

petitioner claimed that it would be unable to secure firm delivery of a

transmission service under a tariff, but FERC found that the tariff itself

allowed the petitioner to purchase firm delivery.  *Id.* at 801-02.  This

case is the opposite:  FERC had engaged with the evidence; the

Commission has chosen to ignore it.

### C.     Neither the FCC's Reliance on a Rule that the FCC Waived, Nor the Waiver, Was Reasonable

The Commission never explains or even acknowledges the

Kafkaesque circularity of its view that it was bound by a rule that it

decided to waive.  The Commission states that it "properly applied

section 25.146 of its rules when evaluating SpaceX's proposed service"

(FCC Br. 41), but it then proceeded to ignore those very requirements.

The argument is arbitrary and capricious on its face, as demonstrated

by the contradiction at its heart:  Having told the Court that its rule

forbade it to look at DISH's evidence, the Commission then turns

around and says that it was fully justified in waiving the same rule.

*See* FCC Br. 47-49.

13

But the waiver does not only show the agency's casual indifference toward the very rule that, in the agency's telling, compelled it to ignore DISH's evidence; it was itself impermissible.

The Order itself offers no justification for the waiver. In the waiver's defense, the FCC and SpaceX intimate that a waiver should be easier to grant the second or third time around. FCC Br. 51-52; SpaceX Br. 21. Not so. The Commission specifically attempts a sleight of hand by referring to the rationale given for the waiver in the *First Modification Order*, as if it obviates the need for a rationale in support of the waiver's continuation. *See* FCC Br. 51 (discussing ¶¶ 12, 13, and 9 of the Order, which were not mentioned by the Order as a rationale for the waiver).[3]  "[T]he proper focus of a reviewing court is on the

---

[3] The Commission misstates the rationale that its International Bureau gave for granting the initial waiver in the *First Modification Order*. The Bureau did not tie its waiver to any "public interest considerations." FCC Br. 51. Indeed, the Commission's assertion on brief that "[t]he Bureau saw no good reason to delay the offering of this service to consumers living in areas with little or no access to broadband" (*id.* at 50-51) appears to be just another *post hoc* rationalization made for this appeal. It is nowhere to be found in the Bureau's grant of the initial waiver. *See First Modification Order*, 34 FCC Rcd. 2526 ¶ 28 (2019).

reasons given by the [agency] and not on reasons that may come to light if and when a court rummages throughout the record in an effort to reconstruct on what basis the [agency] might have decided the matter." *Matlovich v. Sec'y of the Air Force*, 591 F.2d 852, 860 (D.C. Cir. 1978). That rule is dispositive here, for an agency's bare statement that it saw "no reason" not to continue a waiver is no explanation at all.[4]

Indeed, as the Commission itself acknowledges, AT&T specifically requested that the Commission revoke the waiver when it was considering the Order on review here (*not* the initial modification). *See* FCC Br. 52. The Commission was obliged to provide some explanation for its rejection of that request. Reasoned decisionmaking was especially important because AT&T argued that the Commission's stated goal of offering service to rural areas would not be delayed, since SpaceX would still be able to deploy a large enough number of satellites to provide service. *See* Comments of AT&T Services, Inc. at 3-6 (JA____-__); Reply Comments of AT&T Services, Inc. at 2 (JA____) (the "significant change to the orbital parameters" of SpaceX's system

---

[4] The FCC remains unable to point to any other instance where it has waived the favorable finding requirement. *See* FCC Br. 52-53.

15

necessitated "Commission consideration of a new waiver"). The

Commission's silence—its utter refusal to "articulate any standard by

which [the Court] can determine the policy underlying its waiver"—was

impermissible. *Ne. Cellular Tel. Co. v. FCC*, 897 F.2d 1164, 1166 (D.C.

Cir. 1990).

The Commission next argues that the renewed grant of the waiver

was permissible because the "partial waiver of section 25.146(c) helps

ensure that . . . underserved areas will gain access to SpaceX's service

without undue delay." FCC Br. 51. But the salutary goal of rural

broadband was grafted onto the waiver for the first time in the agency's

brief, and the waiver was not necessary for its achievement anyway.

"[*P*]*ost hoc* rationales offered by counsel cannot fill the holes left

by an agency in its decision[.]" *Env't Health Tr.*, 9 F.4th at 910.

Rather, "when assessing the reasonableness of an agency's action, [this

Court] look[s] only to what the agency said *at the time of the action*—

not to its lawyers' *post-hoc* rationalizations." *Grace v. Barr*, 965 F.3d

883, 903 (D.C. Cir. 2020) (emphasis added) (cleaned up). Here, the

Order contains just one terse statement on the matter: "We further see

no reason to revoke our previously-granted waiver of section 25.146(c)."

Order ¶ 41 (JA____). That conclusory sentence is no explanation at all, and fundamental principles of administrative law preclude the agency from curing the defect in its Order through its brief on appeal.

DISH supports the goal of extending broadband internet service to underserved areas. But SpaceX and the Commission wrongly conflate the benefits of rural broadband in the abstract with the grant of the Order on review here. *See* FCC Br. 22-23, 50-52; SpaceX Br. 4-5. As DISH explained below, SpaceX does not need to use the 12 GHz band in the manner proposed in its third modification to deploy its broadband network; that band represents just *three percent* of the total spectrum licensed to SpaceX. *See* DISH Br. 12; DISH July 14, 2020 Letter at 7 (JA____). Indeed, because SpaceX must share that band with DISH and other users (*see* FCC Br. 10 n.3), the band is not well-suited to SpaceX's plans in the first place.

### D. The FCC Does Not Adequately Explain Why It Did Not Follow the ITU's Own Process

The studies that DISH placed into the record explain that the ITU software does not "work well for complex constellations" such as the SpaceX system, DISH Br. 17-18; Second Study at 1 (JA____), which "comprises many different interleaving orbits, with various altitudes

and inclination angles." Second Study at 1 (JA____). Moreover, the ITU itself acknowledges cases where its software cannot "adequately model" the proposed non-geostationary systems; in such cases, the ITU expects an "indication" of the software's inadequacy and a "commitment" from the licensing country that the system will comply with the power limits. *See* DISH Br. 22; Circular 2-3; ITU Resolution 85 (WRC-03) ¶ 1. Nothing in the ITU Circular limits the requirement that the licensing country indicate software problems only to some categories of problems and not others.

The Commission buries this important point in a footnote (FCC Br. 53 n.16), and SpaceX ignores it entirely. The Commission offers no justification for its failure to follow the ITU procedures outlined above. Its discussion of the ITU Circular is itself circular: The Commission asserts that the part of the ITU Resolution stating this is a case "where the software cannot adequately model" a non-geostationary system does not apply *because the Commission has not made the notification required in such cases. See* FCC Br. 53 n.16 ("The FCC has not asked the ITU for Resolution 85 treatment of SpaceX's system[.]"). That just begs the question: *Why* has the Commission not asked for Resolution

85 treatment?  DISH demonstrated to the Commission that the ITU software could not properly model the SpaceX system.  At an absolute minimum, the Commission was obliged to investigate and decide for itself whether this was the case or not.

The Commission goes on to say that "the input files submitted to the ITU by SpaceX are designed to be used with the ITU software."  *Id.* There is no record support for this proposition.  And, even if it were true, it would not mean that the software itself is capable of appropriately analyzing SpaceX's system.  The Commission is silent on the serious software inadequacies that DISH identified, including the indisputable placement of one of the theoretical user locations on the Arctic Ocean north of Greenland.  *See* DISH BR. 17-18, 22, 25.  The Commission insists that "the ITU will use its software to evaluate SpaceX's system."  FCC Br. 53 n.16.  But, rather than ignore DISH's unrebutted evidence that the software cannot properly model SpaceX's system, the Commission should have notified the ITU of the problem and proceeded to make an independent determination of SpaceX's compliance.

### E.    The Commission Abdicated Its Statutory Duty

Congress commanded that the Commission must protect satellite-TV service from harmful interference, and that statutory obligation trumps a mere agency regulation, even if the Commission were correct that its own rules constrained the way in which it could extend such protection.

The Commission must "prevent interference between stations." 47 U.S.C. § 303(f). This language admits no ambiguity: The Commission *must* act to prevent interference. It should go without saying that section 25.146 of the Commission's rules does not give the Commission a free pass to disregard its obligation to prevent interference, for "a valid statute always prevails over a conflicting regulation[.]" *Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 829 (D.C. Cir. 2006).

Here, the Commission's statutory mandate obliged it to consider DISH's unrebutted evidence of interference and of SpaceX's inability to comply with the power limits. Had it done so, the Commission would not have approved SpaceX's proposed modification with respect to the 12 GHz band.

20

II.     **The Commission Unlawfully Subdelegated Its Authority**

    A.     **DISH Did Not Forfeit Its Subdelegation Challenge**

Citing 47 U.S.C. § 405(a), the Commission asserts that this Court cannot consider DISH's subdelegation, judicial review, and due process arguments because those arguments were not raised with the Commission in a petition for reconsideration of the Order.  *See* FCC Br. 57, 62.  The Commission misconceives what § 405(a) requires.

The "ordinar[y]" rule, of course, is that "disgruntled parties are not required to seek administrative reconsideration before challenging a Commission order in this court[.]"  *M2Z Networks, Inc. v. FCC*, 558 F.3d 554, 558 (D.C. Cir. 2009) (quoting *Nat'l Ass'n for Better Broad. v. FCC*, 830 F.2d 270, 274 (D.C. Cir. 1987)).  This Court has made clear that "exceptions to this general rule are to be construed narrowly," and has specifically rejected the Commission's argument that § 405(a) "bars our consideration of any 'question[] of fact or law upon which the Commission . . . has been afforded no opportunity to pass.'"  *Id.* (quoting 47 U.S.C. § 405(a)).  No petition for reconsideration is required where, as here, the petitioner's arguments "address the substantive content of the FCC's legal conclusions that would necessarily have been implicated

in their application and petition, rather than merely to protest procedural imperfections." *Id.*

Indeed, the Court has distinguished the "apparently conflicting line of our cases in which we have been sticklers in insisting that a party must first present its concerns to the Commission" on the ground that those cases addressed challenges "predicated upon a technical defect." *Time Warner Ent. Co., L.P. v. FCC*, 144 F.3d 75, 80 (D.C. Cir. 1998) (cleaned up). DISH's statutory and constitutional claims are no mere "technical defects." No reconsideration petition was required.[5]

---

[5] In any event, pressing those arguments with the Commission would have been futile. This Court has recognized that section 405(a) "contains the traditionally recognized exceptions to the exhaustion doctrine," including futility. *Freeman Engineering Associates, Inc. v. FCC*, 103 F.3d 169, 183 (D.C. Cir. 1997) (quoting *Omnipoint Corp. v. FCC*, 78 F.3d 620, 635 (D.C. Cir. 1996)). Thus, "petitioners are not required to raise 'futile' arguments before the agency[.]" *Verizon v. FCC*, 770 F.3d 961, 967 n.6 (D.C. Cir. 2014); *see also Omnipoint Corp.*, 78 F.3d at 635 ("[A] reviewing court may consider arguments where issues by their nature could not have been raised, or would have been futile[] to raise[,] before the agency."). As the Commission's own brief makes clear, "there is not the slightest reason to believe that a petition for reconsideration would have caused a shift in the Commission's view . . . ." *All Am. Cables & Radio, Inc. v. FCC*, 736 F.2d 752, 761 (D.C. Cir. 1984) (applying futility exception).

### B.    The Commission Impermissibly Subdelegated to the ITU and SpaceX

As DISH has explained, the Commission violated the subdelegation doctrine by transferring its statutory obligation to prevent interference to the ITU.  *See* DISH Br. 49-56.  In their responses, the Commission and SpaceX falter on a crucial point:  To avoid an unlawful subdelegation, there must be *meaningful review* by the agency.  The Commission's own brief admits that the ITU's role goes well beyond "simply provid[ing] factual information on which the Commission may properly rely."  FCC Br. 36.  Rather, the Commission "ma[kes] clear" that it is substituting the ITU's expertise and determinations for its own:  "[T]he ITU—not the FCC or its staff—would make findings regarding an operator's compliance with the ITU's power limits," and "any review by the Commission's staff 'would duplicate that performed by the ITU[.]'"  *Id.* at 40 (quoting *2017 Order*, 32 FCC Rcd. 7809 ¶ 41 (2017)).  Moreover, the ITU does more than "simply provide factual information" because the Commission subdelegated responsibility to *analyze* the facts as well:  The ITU must analyze the information to come up with a "favorable" rating.

In cases where other agencies adopt third-party standards, the agency remains as a backstop providing a layer of review prior to approval. *See, e.g.*, *Texas v. Rettig*, 987 F.3d 518, 533 (5th Cir. 2021) (upholding subdelegation of actuarial soundness requirements because the agency conducted an independent review and "look[ed] at all of the assumptions, data, and methodology"), *petition for cert. docketed*; *Amerada Hess Pipeline Corp. v. FERC*, 117 F.3d 596, 601-02 (D.C. Cir. 1997). Here, by contrast, the Commission neither reviewed nor applied the ITU's standards (and, of course, those standards were never applied by the ITU itself either, because of the Commission's waiver).

The Commission committed a second unlawful subdelegation when it deferred to the regulated entity's own self-certification that its proposed operations would not cause interference. *See* DISH Br. 56-58. In response, the Commission cites just one case, and ignores the crucial caveat that renders it inapplicable here. *See* FCC Br. 60-61. In *Global Crossing Telecommunications, Inc. v. FCC*, the Commission did *not* rely solely on third-party certification. 259 F.3d 740, 745 (D.C. Cir. 2001). As this Court explained: "[T]he FCC does not rely solely upon certification; certification is *merely the initial step* in the Commission's

enforcement scheme." *Id.* (emphasis added). Here, by contrast, the Commission's waiver of ITU review as a prerequisite to operation left SpaceX self-certification as the *final step* in the approval process. The subdelegation was unlawful.

## III. SpaceX's System Should Have Been Considered in a Later Processing Round

DISH's opening brief explained that the Commission erred by grandfathering SpaceX's status as a 2018 processing round applicant rather than consigning it to the 2020 round. *See* DISH Br. 43-46. The Commission responds that DISH suffered no harm from the grandfathering decision and thus lacks standing to challenge it. *See* FCC Br. 56. But DISH will suffer harm in the form of greater interference with its customers' satellite-TV service. Inclusion in a senior processing round means less of an obligation to protect other non-geostationary systems, greater frequency of operations, and therefore greater frequency of exceeding the power limits intended to protect DISH's geostationary satellite television service, too. This is shown by the *Teledesic* decision itself (which the Commission adopted in the Order): "When analyzing the potential for increase in interference for satellite-to-Earth transmissions, we need to look at the

25

effect on . . . [geostationary] . . . systems." *Teledesic*, 14 FCC Rcd. 2261

¶ 20 (1999). By refusing to move SpaceX's application to a later

processing round, the Commission allowed SpaceX to modify its system

in a manner that increases the risk of harmful interference to DISH

and its customers.

## IV. The Order Vitiates Judicial Review and Infringes Due Process

The Order also deprived DISH of its statutory and constitutional

rights to judicial review. *See* DISH Br. 58-61. The Commission's

response is incredible: It says that DISH's inability to appeal the ITU's

decision is irrelevant because the Commission waived the requirement

of ITU review. *See* FCC Br. 63. Even setting aside the self-fulfilling

nature of this argument, the truth is that the Commission did not

wholly waive the requirement of ITU review—it simply waived the

requirement that SpaceX obtain a favorable outcome from the ITU

*before commencing operations*. And the ITU's determination will be the

end of the matter, with no possibility for DISH to be heard or take an

appeal.[6]

---

[6] The Commission's exhaustion argument here fails for the same
reasons as its section 405 objection to DISH's subdelegation argument.
*See above* § II.A.

Next, the Commission broadly asserts DISH has no constitutionally protected property interest at stake here. The argument ignores DISH's point that it has been denied its *statutory* right of appeal. *See* DISH Br. 58-61. The Commission also overreads the statement about property rights in *FCC v. Sanders Brothers Radio Station*, 309 U.S. 470, 475 (1940). To suggest that an FCC license is "a non-protected interest, defeasible at will[,]" would "throw considerable doubt on the Commission's well-known recognition of a renewal expectancy that leads applicants to vie for licenses which, if awarded, will require a significant expenditure of resources." *Orange Park Fla. T.V., Inc. v. FCC*, 811 F.2d 664, 674 n.19 (D.C. Cir. 1987).

Here, DISH's rights in its license include a right to protection under the Communications Act from harmful interference. *See* 47 U.S.C. § 303(f). Moreover, the Commission's action infringed DISH's right to its satellites, a right separate from DISH's right to use of the spectrum.

The Commission has thus vitiated DISH's statutory and constitutional rights to judicial review.

## CONCLUSION

For the reasons given above and in DISH's opening brief, this Court should vacate the Order with respect to SpaceX's authorization to use the 12 GHz band.

Dated:  October 12, 2021                    Respectfully submitted,

Jeffrey H. Blum                             /s/ *Pantelis Michalopoulos*
Alison Minea                                Pantelis Michalopoulos
Hadass Kogan                                Andrew M. Golodny
**DISH NETWORK CORPORATION**                Mark C. Savignac
1110 Vermont Avenue NW                      William Travis West
Suite 450                                   **STEPTOE & JOHNSON LLP**
Washington, D.C. 20005                      1330 Connecticut Avenue NW
                                            Washington, D.C.  20036
                                            (202) 429-6494

                                            *Counsel for DISH Network Corp.*

## CERTIFICATE OF COMPLIANCE

I, Pantelis Michalopoulos, counsel for Appellant DISH Network Corporation, hereby certify that the brief complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) and of this Court's briefing order. This motion was prepared in a proportionally space typeface using 14-point Century font and contains 5,434 words, excluding material exempted by Fed. F. App. P. 32(f).

Dated: October 12, 2021                          /s/ *Pantelis Michalopoulos*
                                                  Pantelis Michalopoulos
                                                  STEPTOE & JOHNSON LLP
                                                  1330 Connecticut Ave. NW
                                                  Washington, D.C. 20036
                                                  (202) 429-6494

# STATUTES AND REGULATIONS ADDENDUM

## STATUTORY AND REGULATORY ADDENDUM

Except for the following, all applicable statutes, regulations, etc., are contained in the Opening Brief for Appellant DISH Network Corporation.

## TABLE OF CONTENTS

Statutes

1.    47 U.S.C. § 405(a)......................................................................ADD2

Regulations

2.    47 C.F.R § 25.111(a)................................................................ADD5

# STATUTES

## 47 U.S.C. § 405

§ 405. Petition for reconsideration; procedure; disposition; time of filing; additional evidence; time for disposition of petition for reconsideration of order concluding hearing or investigation; appeal of order

(a)After an order, decision, report, or action has been made or taken in any proceeding by the Commission, or by any designated authority within the Commission pursuant to a delegation under section 155(c)(1) of this title, any party thereto, or any other person aggrieved or whose interests are adversely affected thereby, may petition for reconsideration only to the authority making or taking the order, decision, report, or action; and it shall be lawful for such authority, whether it be the Commission or other authority designated under section 155(c)(1) of this title, in its discretion, to grant such a reconsideration if sufficient reason therefor be made to appear. A petition for reconsideration must be filed within thirty days from the date upon which public notice is given of the order, decision, report, or action complained of. No such application shall excuse any person from complying with or obeying any order, decision, report, or action of the Commission, or operate in any manner to stay or postpone the enforcement thereof, without the special order of the Commission. The filing of a petition for reconsideration shall not be a condition precedent to judicial review of any such order, decision, report, or action, except where the party seeking such review (1) was not a party to the proceedings resulting in such order, decision, report, or action, or (2) relies on questions of fact or law upon which the Commission, or designated authority within the Commission, has been afforded no opportunity to pass. The Commission, or designated authority within the Commission, shall enter an order, with a concise statement of the reasons therefor, denying a petition for reconsideration or granting such petition, in whole or in part, and ordering such further proceedings as may be appropriate: Provided, That in any case where such petition relates to an instrument of authorization granted without a hearing, the Commission, or designated authority within the Commission, shall take such action within ninety days of the filing of such petition. Reconsiderations shall be governed by such general rules as the Commission may establish, except that no evidence other than newly discovered evidence, evidence

which has become available only since the original taking of evidence, or evidence which the Commission or designated authority within the Commission believes should have been taken in the original proceeding shall be taken on any reconsideration. The time within which a petition for review must be filed in a proceeding to which section 402(a) of this title applies, or within which an appeal must be taken under section 402(b) of this title in any case, shall be computed from the date upon which the Commission gives public notice of the order, decision, report, or action complained of.

# REGULATIONS

## 47 C.F.R § 25.111(a)

§ 25.111. Additional information, ITU filings, and ITU cost recovery.

(a) The Commission may request from any party at any time additional information concerning any application, or any other submission or pleading regarding an application, filed under this part.

## CERTIFICATE OF SERVICE

I hereby certify that, on October 12, 2021, I electronically filed the foregoing document with the United States Court of Appeals for the D.C. Circuit by using the CM/ECF system. I certify that the counsel of record for Appellees and Intervenor are registered as ECF Filers and that they will be served by the CM/ECF system.

/s/ *Pantelis Michalopoulos*
Pantelis Michalopoulos
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, D.C. 20036
(202) 429-6494